UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LUZ MATA, parent and next friend of C.M., a minor, <br><br> Plaintiff, <br><br> v. <br><br> ELSIE WHITLOW STOKES COMMUNITY FREEDOM P.C.S., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 06-1457 (RMC)

MEMORANDUM OPINION

This case concerns attorneys' fees[1] for administrative proceedings under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Counsel for plaintiff complain that the Elsie Whitlow Stokes Community Freedom Public Charter School ("Stokes PCS") has failed and refused to pay their reasonable attorneys' fees for prevailing at a due process hearing on February 25, 2003, and through a Hearing Officer Decision ("HOD") issued on March 3, 2003. Because Ms. Mata did not prevail, no attorneys' fees are due. The complaint will be dismissed.

I. STATUTORY BACKGROUND

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *See* 20 U.S.C. § 1400(d)(1)(A). As a condition of receiving funds under the Act, the IDEA requires that school

---

[1] The invoices submitted by the Plaintiff for C.M.'s legal services totaled $11,890.41. *See* Complaint Exh. 2, Administrative Record ("AR") at 32.

districts adopt procedures to ensure appropriate educational placement of special needs students. *See* 20 U.S.C. § 1413. Parents who object to their child's individualized education programs are entitled to an impartial due process hearing, *see* 20 U.S.C. §§ 1415(b)(6), (f)(1), at which they have "a right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1).

Section 1415(i)(3)(B) of the IDEA gives courts authority to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party," which includes the authority to award fees to a party who has prevailed in an administrative due process proceeding. *See Moore v. District of Columbia*, 907 F.2d 165, 166 (D.C. Cir. 1990) (en banc); *Armstrong v. Vance*, 328 F.Supp.2d 50, 52 (D.D.C. 2004). The amount of fees awarded is based "on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C)).

## II. FACTUAL BACKGROUND

C.M. was a ten-year-old 4th grader at the relevant time in 2002, at Stokes PCS in the District of Columbia. On July 30, 2002, a multi-disciplinary team ("MDT") met to develop an initial individual education plan ("IEP") for C.M.[2] Complaint Exh. 2, AR at 3. He had earlier gone through a psychological-educational evaluation, which recommended a neuropsychological evaluation for possible Asperger's Syndrome. *Id.* C.M. was classified by Stokes PCS as "Other Health Impaired" ("OHI") based on his suffering from Asperger's Syndrome. Ms. Mata contends that the MDT directed the parents to obtain the recommended neuropsychological evaluation on their own. *Id.* The parent requested a due process hearing under the IDEA on November 4, 2002, presenting the question of whether Stokes PCS "fail[ed] to comprehensively evaluate the child considering his

---

[2] C.M. was provided with eleven hours of specialized instruction and related services per week. Complaint Exh. 2, AR at 3.

psychological-educational evaluation dated June 27, 2002, [which] clearly recommended that a neurological evaluation be done." *Id*. at 4. Ms. Mata also sought compensatory education for C.M.

A hearing was convened on February 25, 2003, before Hearing Officer Lois Hochhauser. At some unspecified time prior to the hearing, the requested testing was conducted. *Id.,* AR at 11 (Hearing Officer directing consideration of the existing neurological report). At the hearing, the only issue presented was whether C.M. had been properly classified as OHI, based on suspected Asperger's Syndrome, instead of Learning Disabled ("LD") until the possible diagnosis was confirmed, if at all. *Id.,* AR at 10.[3] The Hearing Officer agreed that it had been inappropriate to classify C.M. as health impaired without further testing and "conclude[d] that the designation of disability on the IEP was incorrect." *Id.,* AR at 10-11.

Counsel for Ms. Mata "claim[ed] that this incorrect designation of disability automatically entitle[d] the student to compensatory relief." *Id.*, AR at 11. The Hearing Officer rejected this claim and determined that she could not order compensatory relief "without some evidence that the student was denied services as a result of the incorrect designation and that the denial impacted on [sic] his special education program." *Id.,* AR at 11. Therefore, as the Hearing Officer advised the parties during the hearing itself, she ordered the MDT/IEP team to reconvene to consider the neurological report and revise the IEP as needed. In addition, the Hearing Officer "direct[ed] that the parties discuss the student's entitlement to compensatory relief and develop a program if they agree on that entitlement. If they do not, the parent may seek a hearing on that issue." *Id*. AR at 11.

---

[3] Ms. Mata also complained about the IEP's lack of math goals but withdrew that issue after Stokes PCS explained that the goals had been drafted and included in the IEP and must have been omitted from the parent's copy by mistake. *See* Complaint Exh. 2, AR at 9, n.2.

There is no indication in the record that Ms. Mata ever demanded a hearing on the issue of C.M.'s entitlement to compensatory relief.

### III. LEGAL STANDARDS

Federal district courts have original jurisdiction over civil actions arising under federal statutes. 28 U.S.C. § 1331. Ms. Mata brings suit under the IDEA, a federal statute. As this case presents a question of federal law, this Court has original jurisdiction.

Defendant Stokes PCS moves this Court to dismiss the complaint filed by Ms. Mata for failure to state a claim on which relief can be granted or, in the alternative, to enter summary judgment in its favor. A motion to dismiss should not be granted unless Ms. Mata can demonstrate no set of facts that supports her claim entitling her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1117 (D.C. Cir. 2000). In evaluating the motion to dismiss, "the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff[]." *See Armstrong*, 328 F.Supp.2d at 53 (citing *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997)). While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by the plaintiff if those inferences are not supported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. *See Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996); *Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In the alternative, Stokes PCS moves this Court for summary judgment. A motion for summary judgment is granted when " there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light

most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita*, 475 U.S. at 587.

### IV.  ANALYSIS

Plaintiff argues that she is entitled to reimbursement of reasonable attorneys' fees because she was "successful at the administrative hearing level in securing some or all the relief requested in [her] August 28, 2003 Hearing Request, thereby conferring 'prevailing party status' upon [her] pursuant to 20 U.S.C. § 1415." *See* Pl.'s Opp. to Def.'s Mot. to Dismiss at 1. Stokes PCS, on the other hand, argues that the plaintiff is not the prevailing party because the only order the hearing officer gave was to convene a meeting to review the neuro-psychological evaluation, which Stokes PCS had already proposed doing. *See* Def.'s Reply Br. at 3. Stokes PCS also argues that the fees requested are not reasonable in light of the simplicity of the case; the fact that Plaintiff was merely seeking more testing and meetings; and that Stokes PCS had already conducted the requested evaluations and was prepared to hold meetings to discuss the student. *Id*.

A parent who is a "prevailing party" in an IDEA administrative hearing may seek attorneys' fees. 20 U.S.C. § 1415(i)(3)(B). "[A] 'prevailing party' is one who has been awarded some relief by the court." *See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 603 (2001). Under the IDEA, it is only for the federal court, not the hearing officer, to determine whether a party has achieved prevailing party status. *Wright v. District of Columbia*, 2007 WL 1141582 at *2 (D.D.C April 17, 2007). However, a

hearing officer's decision on the merits in an IDEA proceeding can constitute an administrative imprimatur, which while not judicial, might change the legal relationship between the parties. *Id.* (citing *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 76 (2d Cir. 2005)). The question here is whether Ms. Mata actually "prevailed" in the hearing before Hearing Officer Hochhauser. The Court concludes that she did not.

There must be an "alteration in the leal relationship of the parties" that has been given some judicial imprimatur in order to qualify as a "prevailing party" under fee-shifting statutes. *See Buckhannon*, 532 U.S. 598 at 610; *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492 (D.C. Cir. 2003) (finding that a prevailing party must show that there has been some "court-ordered change in the legal relationship between the plaintiff and the defendant"). The *Buckhannon* "prevailing party" standard applies to requests for attorneys' fees under the IDEA. *See Armstrong v. Vance*, 328 F. Supp. 2d at 57 (D.D.C. 2004) (citing *Doe v. Boston Public Schools*, 358 F.3d 20, 26 (1st Cir. 2004)); *John T. v. Deleware County Intermediate Unit*, 318 F.3d 545, 558 (3d Cir. 2003) (*Buckhannon* applicable to IDEA); *J.C. v. Regional School District 10, Board of Education*, 278 F.3d 119, 125 (2d Cir. 2002) (noting that *Buckhannon* precludes fee award under IDEA if parties settled during administrative proceedings).

Various important points are not contested: the clinical psychologist who conducted the psychological-educational evaluation on C.M. recommended a neurological evaluation to determine whether he suffered from Asperger's Syndrome. Complaint Exh. 2, AR at 10. The MDT accepted the concept (it cannot be called a diagnosis) that C.M. suffers from Asperger's and developed his IEP in July 2002 with that understanding. *Id.* Since it accepted the possibility of Asperger's Syndrome, presumably the MDT thought it did not need a neurological evaluation to

make a true diagnosis. Understandably, Ms. Mata sought a due process hearing to review this decision. At that point (or earlier),[4] Stokes PCS conducted the requested evaluation. Thus, when the parties appeared before the Hearing Officer on February 25, 2003, Stokes PCS argued that the matter was moot. *See* Compl. Exh. 2, AR 2.

The Hearing Officer disagreed because she wanted to clarify that it had been inappropriate to classify C.M. as OHI due to Asperger's Syndrome without a diagnosis. Nonetheless, she did not find that the mis-classification necessarily resulted in C.M. failing to receive a free and appropriate public education ("FAPE"). Rather, she noted:

> There was no evidence presented by either party regarding the IEP. There was no allegation that the IEP lacked goals and objectives that the student required or that the student was not receiving appropriate services. The only fact that is clear is that the IEP listed the wrong designation of disability. Since there is no automatic entitlement [to compensatory services], the Hearing Officer will not make any assumptions regarding the student's entitlement.

*Id.,* AR at 11. The Hearing Officer specifically directed the parent to seek a hearing in the future if she believed that C.M. was entitled to compensatory services that Stokes PCS refused to provide.

Nothing in this record indicates that Ms. Mata was a "prevailing party." Rather, the Hearing Officer directed the parties to continue on the course that Stokes PCS was already following and to file further claims if disputes remained. *See Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change.") Stokes PCS performed the requested testing prior to the Due Process Hearing. The only debate at the hearing was whether the MDT erred when it classified C.M. as OHI. Counsel for Ms. Mata "claim[ed] that this incorrect

---

[4] The parties have not supplied this information.

designation of disability automatically entitle[d] the student to compensatory relief." *Id.,* AR at 11. The Hearing Officer rejected this claim and determined that she could not order compensatory relief "without some evidence that the student was denied services as a result of the incorrect designation and that the denial impacted on [sic] his special education program." *Id.,* AR at 11.

Although the Hearing Officer held that the MDT did err in its OHI designation, she did not find that the classification error had any impact on C.M.'s education due to a total lack of evidence on the point. *See Skrine v. Dist. of Columbia*, 2007 WL 915227 at *4 (D.D.C. Mar. 27, 2007) (noting that "[a] plaintiff is deemed to have prevailed at the administrative level where the hearing officer's decision awarded plaintiff 'relief on the merits'"). It cannot be said that the HOD ordered any change in the party's legal relationship or that Ms. Mata received any greater relief through the hearing than Stokes PCS had already provided.[5]

## V. CONCLUSION

Because Ms. Mata was not a "prevailing party" in the administrative forum, she cannot recover attorneys' fees in federal court. Defendant Stokes P.C.S.'s Motion to Dismiss [Dkt. #2] will be granted   A memorializing order accompanies this memorandum opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: May 21, 2007

---

[5] Ms. Mata cannot recover attorneys' fees because she was not the prevailing party. In addition, the Court notes that the fees charged were excessive, with many-too-many lawyers billing on a very simple case, and would otherwise be reduced to a reasonable amount were that issue still alive before the Court.